IN UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MASSACHUSETTS

DOUGLAS S. BROWN, STEPHEN KAWELTI
and JAMES A. PROSSER,

             Plaintiffs,

    v.

BANK OF AMERICA, N.A.,

             Defendant.

Case No. 05-10713-PBS
Hon. Patti B. Saris

Complaint Filed:  April 11, 2005

**DEFENDANT, BANK OF AMERICA N.A.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT AND SUMMARY JUDGMENT (AS TO COUNTS TWO AND THREE)**

**INTRODUCTION**

This is a four-state[1] putative class action brought by the Plaintiffs, Douglas S. Brown,

Stephen Kawelti, and James A. Prosser ("Plaintiffs"), challenging the ATM Decals that the

Defendant, Bank of America, N.A., ("Bank of America") places on its automatic teller machines

("ATMs").  The Second Amended Complaint ("SAC") contains three counts:  (1) the Electronic

Funds Transfer Act, 15 U.S.C. §1693 ("EFTA"); (2) Massachusetts General Law ch. 93A

("Chapter 93A"); and (3) California's Bus. & Prof. Code §17200 *et seq.* ("Section 17200").

*"Wrongful verb" claim.*  Plaintiffs in the California and Maryland subclasses contend

that Bank of America uses the wrong verb -- "may" -- on its ATM Decals.  According to

Plaintiffs, Bank of America notifies users that non-customers of the bank "may" be charged for

cash withdrawals, whereas "fees are definitely charged except in the case of benefits deposits."

Plaintiffs contend that if even one person is charged, the Bank's verb choice violates the EFTA.

---

[1]  California, Maryland, Massachusetts, and Rhode Island.

Plaintiffs are wrong. Neither the EFTA nor the Federal Reserve Board's "Regulation E" prescribes a mandatory form of verb. Moreover, Judge Young recently granted summary judgment in favor of Webster Bank in an identical "wrongful verb" class action case brought by the same class counsel. He characterized plaintiff's verb argument as "ridiculous" and "bordering on the frivolous." *Morrissey v. Webster Bank, N.A.*, 2006 U.S. Dist. LEXIS 6543 (D. Mass., Feb. 22, 2006).

This Court should enter partial summary judgment in favor of Bank of America on Plaintiffs' "wrongful verb" claim.

*"$500,000 cap."* The EFTA imposes a $500,000 cap on the total amount of statutory damages, "in any class action or series of class actions arising out of the same failure to comply by the same person." Here, Plaintiffs have carved up their "class action" into four state-only classes and, through that legal surgery, will presumably contend that each is eligible to receive a separate $500,000 "cap" award. They also include two state law claims (under Chapter 93A and Section 17200) each of which appears to seek *un*-capped monetary relief.

Neither is permissible. The first violates the EFTA "cap" provision, while the second violates EFTA's preemption provision. A trial court in California ruled in an indistinguishable "wrongful verb" case that Plaintiffs may not use Section 17200 to pyramid the EFTA "cap."

The Court should enter partial summary judgment in favor of Bank of America holding that the EFTA's cap cannot be circumvented by manipulating the pleadings.

*No "Loss Causation."* All three laws -- the EFTA, Chapter 93A, and Section 17200 -- require that Plaintiffs have suffered injury "as a result of" the allegedly wrongful acts. But here, the only harm alleged is that potential class members paid a transaction fee to withdraw cash from a Bank of America ATM machine for their convenience instead of using their own bank's machine. It is undisputed that on every ATM screen the Bank discloses that a fee is charged and asks each user, "Do you want to continue?" Only those who enter "Yes" are charged. Thus, every member of the proposed class is someone who, by definition, instructed Bank of America to impose the charge so they could withdraw cash.

The Court should enter partial summary judgment in favor of Bank of America on the EFTA count,[2] and summary judgment on the Chapter 93A and Section 17200 counts.

## BACKGROUND FACTS

### A.    Plaintiffs' Charging Allegations.

Plaintiffs filed this action on behalf of four putative statewide classes, Maryland, Massachusetts, Rhode Island, and California, defining the class as non-customers of Bank of America who were charged an ATM fee for using a Bank of America ATM to withdraw cash from their accounts with another bank. (SAC, ¶¶23-24.) There are essentially two claims, both alleging violations of the EFTA.

### 1.    The "Placement" Claim.

Plaintiffs contend that Bank of America failed to (i) "prominently and conspicuously" post its ATM Decals "on or at" the ATM machine, and (ii) the print size is small and unclear in violation of the EFTA (15 U.S.C. §1693b) and Regulation E (12 C.F.R. §205.16(c)(1).) (SAC ¶18.) All Plaintiffs assert this as an EFTA violation. In addition, the Massachusetts and California Plaintiffs seek relief for this "placement" and print-size claim under Chapter 93A and Section 17200, respectively. But, as pled, those state-law claims are merely derivative of the alleged EFTA violation. (SAC ¶33 [Ch. 93a]; ¶37 [Section 17200].)

### 2.    The "Wrongful Verb" Claim.

The Maryland and California subclasses allege a second violation, namely, that Bank of America uses the wrong verb ("may") on its ATM Decals. (SAC ¶19.) Plaintiffs contend that the Bank's verb choice is actionable because "fees are definitely charged except in the case of benefits deposits," which are certain relationships the bank has with non-customers for whom no fee is charged. (SAC ¶19.)

---

[2] Summary judgment on this issue would not dispose of the entire claim, as it would leave Plaintiffs with a claim for actual damages under the EFTA, although it is hard to conceive how anyone who instructed the bank to impose this charge was actually damaged.

**B.    The Facts Concerning Bank Of America's Compliance With The EFTA.**

**1.    The Statutory Requirement.**

The governing law is not in dispute.  The EFTA requires each ATM operator that charges ATM fees to non-customers for use of the ATM to provide notice of "the fact that a fee is imposed by such operator for providing the service."  15 U.S.C. §1693b(d)(3)(A).  This notice must be provided both (1) "at or on" the ATM machine and (2) on the ATM screen (or paper receipt) before the consumer is "irrevocably committed" to the transaction.  15 U.S.C. §1693b(d)(3)(B).

**2.    Bank of America's ATM Decal.**

Bank of America places an ATM Decal on or at its ATM machines that informs non-customers about the fee and the amount.  (Declaration of Jennifer Haag, ¶4.)  The ATM Decals are posted on the side of the ATM machine.  (SAC ¶18)  The ATM Decal used in Maryland and California states:

> The owner of this terminal, Bank of America, may charge a $1.50 fee for a cash withdrawal from your NON-Bank of America account.  This charge is in addition to any fees that may be assessed by your financial institution.  This additional charge will be added to your total withdrawal amount.  For questions, please contact your financial institution.

(*Id.*, ¶4; Ex.A.)

**3.    Bank of America's "Click-Through Screen."**

In addition to the ATM Decal, Bank of America informs consumers on the ATM screen that they are about to be charged a fee.  If the ATM identities the user as a non-customer of Bank of America a special screen appears, which contains this notice:

> Bank of America, the owner of this ATM machine, adds an ATM usage fee to cash withdrawals.  This fee is in addition to any fee which may be assessed by your financial institution.  Do you want to continue with this transaction?  Yes/No.

(Haag Decl., ¶5; Ex. B.)  The "click-through" screen also identifies the exact amount of the charge.  Only if the user enters "Yes" does the bank charge a fee.  (*Id.,* ¶6.)  The customers then specifically authorizes Bank of America to debit their bank account for a certain sum and to

dispense cash to them and in exchange for this service, they agree to pay the stated transaction fee.

### 4.    Bank of America's Fee Waivers.

Bank of America does not charge a cash withdrawal fee to every non-customer. As Plaintiffs admit, Bank of America does not charge a fee to some recipients of government benefits who use their "stored-value card" to withdraw cash at a Bank of America ATM. (SAC ¶19.) In addition, the Bank does not charge its own customers for cash withdrawals (Haag Decl., ¶7), nor does it charge a fee for international transactions, *i.e.*, cash withdrawals made in the U.S. by cardholders who hold an ATM card issued by a foreign bank. (*Id.*, ¶7.)

Furthermore, during the alleged one-year class period, Bank of America has recognized other categories of fee waivers, including customers of certain other financial institutions (Bank of the Commonwealth, Velero Credit Union, Fleet Bank, Bristol County Savings Bank, Mechanics Savings Bank, and some MBNA cardholders). (Haag Decl., ¶7.) Furthermore, Bank of America provides other fee waivers when special circumstances arise. For example, in the aftermath of Hurricane Katrina, Bank of America agreed not to charge for cash withdrawals made by cardholders using certain ATM cards issued by certain financial institutions located in Alabama, Louisiana, and Mississippi. (Haag Decl., ¶7.)

### LEGAL STANDARD

A court may grant summary judgment "upon all or any part" of particular claims or defenses. Fed. R. Civ. Proc. 56(b); *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999). Summary judgment is warranted if, after reviewing the facts in the light most favorable to the non-moving party, no genuine issues of material fact remain, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate here, as none of the material facts can be disputed, thus, the only question presented is the application of the law to these facts.

## ARGUMENT

I.    **THE COURT SHOULD ENTER SUMMARY JUDGMENT ON PLAINTIFFS' "WRONGFUL VERB" CLAIM.**

The Maryland and California Plaintiffs contend that Bank of America's ATM Decals violate the EFTA because they warn that a fee "may" be charged to non-customers. (SAC ¶19.) Plaintiffs are wrong, for four separate reasons.

### 1.    Judge Young Has Rejected Plaintiffs' Interpretation.

First, Judge Young recently rejected Plaintiffs' theory in the only decision to have considered this issue. In *Morrissey v. Webster Bank, N.A.*, 2006 U.S. Dist. LEXIS 6543 (D. Mass., Feb. 22, 2006), the plaintiff (represented by the same counsel who is representing the Plaintiffs here) argued that if an ATM operator imposes a fee on even a single non-customer, the bank must have a decal notice that a fee "will" be charged. *Id.* at *7. Finding this interpretation to be "ridiculous" and "frivolous," the Court analyzed the plain language of the EFTA:

> Even read "plainly", the statute does not always require notice that a fee "will" be charged .... Though starting with the general statement that the notice provision applies to an ATM operator who imposes a fee "on <u>any</u> consumer", the statute then requires that the notice actually be given only "to <u>such</u> consumer ... that a fee is imposed." Thus, the statute "plainly" requires on-machine notice only to those consumers on whom a bank imposes a fee. ...
>
> One is left, then, with the conundrum of a statute that "plainly" requires on-machine notice to some consumers but not to others. If it were possible instantly upon a consumer walking up to an ATM to know whether the statute required on-machine notice to that particular consumer, then the statute easily could be followed. But it is a metaphysical fact that is simply not possible until the consumer has proceeded to initiate the transaction. ...
>
> The obvious solution to this "problem" has no doubt occurred to the reader several pages ago: The notice "on the machine" should state that a fee "may" be imposed, while the notice "on the screen" should appear only when a fee is imposed. This interpretation of the statute and regulation accounts not only for the on-machine notice provision in the statute, but also logically integrates the on-screen notice requirements.

*Id.* at *15-19.

Plaintiffs "interpretation" of the EFTA should be rejected here as well.

### 2.    The EFTA's Plain Meaning Dooms Plaintiffs' Interpretation.

Second, Judge Young was correct. Lots of statutes contain verbs, but few impose liability for failure to use that exact verb. That is also true of the EFTA. It does not mandate that any particular verb be used in the ATM Decal. The EFTA simply provides that an ATM operator must provide notice on its ATM Decal of the fact that a fee "is" imposed:

> (3) Fee disclosures at automated teller machines.
>
> (A) In general. The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of (i) **the fact that a fee is imposed by such operator for providing the service;** ....

15 U.S.C. §1693b(d)(3)(A)(i)-(ii) (emphasis added).

The verb "is" means "that which is factual, empirical, actually the case." *Webster's Third New International Dictionary*, p. 1197 (1993).[3] The verb the Bank uses -- "may" -- means "have the ability or competence to," "have permission to," and "be in some degree likely to." *Id.*, p. 1396. Thus, Bank of America's disclosure complies with the EFTA's plain meaning. It is "actually the case" that a fee "may" -- is "likely to" -- be charged to non-customers by the Bank.

### 3.    The Federal Reserve Board's Regulation E Does Not Prohibit "May."

Third, Reg. E does not support Plaintiffs' theory. The Federal Reserve Board ("FRB") promulgated Reg. E to carry out the purposes of the EFTA. *See* 15 U.S.C. §1693b(a). Reg. E does not mandate any particular choice of verb. Rather, it merely provides that an ATM operator who imposes a fee shall "[p]rovide notice that a fee will be imposed for providing electronic fund transfer services ... and [d]isclose the amount of the fee." 12 C.F.R. §205.16(b). Nowhere does the FRB state that it is imposing a particular form of verb on ATM operators.

---

[3] Courts "can look to the dictionary for clarification of the plain meaning of the words selected by Congress." *Perez-Olivio v. Chavez*, 394 F.3d 45, 49 (1st Cir. 2005) (citing Webster's Third New International Dictionary).

Elsewhere, Reg. E provides that the disclosures merely need to be "clear and readily understandable" and that a bank may "include additional information" in complying with the disclosure requirements. All of this suggests that the FRB intended to give banks discretion in crafting language to include in their ATM signage. *See* 12 C.F.R. §205.4.

If Plaintiffs were correct, the subtlety of their analysis was lost even on the FRB, which is charged with the EFTA's interpretation. The statute uses the verb phrase "is charged." The FRB, however, uses the verb phrase "will be imposed." Clearly, the FRB did not think that any specific verb choice was mandated or it would have used the same verb phrase Congress did. That it did not do so is powerful corroboration of Judge Young's determination that even before its February 2006 amendments to Reg. E, the FRB did not prohibit banks from using the verb "may." *Morrissey v. Webster Bank, N.A.*, *supra*, slip opn. at *15-16.

### 4.    The New Reg. E Amendments Expressly Permit "May."

Fourth, Bank of America's use of the verb "may" is clearly permissible in light of the amendments to Reg. E. On February 9, 2006, amendments to subsection (c) of Reg. E became effective. These provide that ATM operators may meet the requirements of Reg. E by posting a notice that "[a] fee *may be imposed* for providing electronic fund transfer services or for a balance inquiry, but ... only if there are circumstances under which a fee will not be imposed for such services." Final Rule, 71 F.R. 1638, 1655-56 (to be codified at 12 C.F.R. §205.16(c)(1)).

Here, Plaintiffs concede there is at least one "circumstance" -- government benefit recipients -- in which Bank of America will not impose a fee. (SAC ¶19.) In fact, there are half a dozen or more "circumstances" in which the bank will not impose a fee. (*See* Haag Decl., ¶7.) But even one is sufficient. The FRB has determined that "may" complies so long as "there are circumstances under which a fee will not be imposed."

The FRB characterizes its Final Rule as a "clarification" of existing law. *See* Final Rule, 71 F.R. at 1655-56 ("this amendment does not represent a change in the Board's interpretation of the rule's requirements"). That determination is itself entitled to deference. *First Nat'l Bank of*

*Chicago v. Standard Bank & Trust*, 172 F.2d 472, 478 (7th Cir. 1999); accord, *Morrissey v. Webster Bank, N.A., supra*, slip opn. at *16.

Even if this Court disagreed with the Final Rule, it should not deviate from it, for two reasons.

*First*, in enacting the EFTA, Congress delegated to the FRB broad powers to develop "such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of electronic fund transfers, *as in the judgment of the Board* are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith. 15 U.S.C. §1692b(c)(italics added). This delegation goes beyond the usual *Chevron* deference afforded by courts to agency rule-making.[4] In speaking of the identically-worded enabling statute under the federal Truth in Lending Act, the United States Supreme Court held that FRB interpretations of TILA through its Regulation Z should be accepted unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-66 (1980). Here, the FRB's determination of what verbs can be used on a bank's ATM Decal cannot be said to be "demonstrably irrational."

*Second*, even under a traditional "*Chevron*" standard the FRB's amended Reg. E should be followed: "[I]f the legislative intent is clear, [the courts] do not defer to the agency" and simply require that the regulations be consistent with the statute. *Harvey v. Veneman*, 396 F.3d 28, 34 (1st Cir. 2005). If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue," the question "is whether the agency's answer is based on a permissible construction of the statute." *Id.* We accord deference to the agency "as long as its interpretation is rational and consistent with the statute." *Id.* (citation omitted).

---

[4] *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984).

Here, the FRB's amended Regulation E "is rational and consistent with the statute" and should be followed. *See Morrissey v. Webster Bank, N.A., supra*, slip opn. at \*16 n. 13 ("Even if this Court disagreed with the Board in its interpretations of the statute and its own regulation, the Court likely would have to give significant deference to such interpretations.")

The Court should enter partial summary judgment in favor of Bank of America on the "wrongful verb" claim.

## II.    THIS COURT SHOULD ENTER PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S TENTH AFFIRMATIVE DEFENSE BASED ON THE $500,000 "CAP" ON CLASSWIDE DAMAGES.

### A.    The Maximum Amount Of Statutory Relief To Which Plaintiffs Are Entitled Under The EFTA Is $500,000.

The EFTA allows for the recovery of statutory damages for violations. In the case of class actions, however, the EFTA imposes a unitary $500,000 cap: "[T]he total recovery under this subparagraph *in any class action or series of class actions arising out of the same failure to comply by the same person* shall be not more than ... $500,000."[5] 15 U.S.C. §1693m(a)(1)(B) (italics added).

Plaintiffs want to avoid the "cap" in two ways. First, they have chopped their single case into four separate subclasses, hoping to thereby multiply the "cap" by a factor of four and converting this $500,000 case into a $2 million case. Second, the Massachusetts and California subclasses have filed state law claims that are purely derivative of their EFTA claims, hoping for those states anyway to multiply the $500,000 cap times two.

The maximum amount to which Plaintiffs are potentially entitled is $500,000, no more. That cap applies even though Plaintiffs seek relief on behalf of several classes comprising four states. 15 U.S.C. §1693m (cap applies to a "series of class actions").[6] Here, the alleged

---

[5] It actually reads, "... shall be not more than the lesser of $500,000 or 1 per centum of the net worth of the defendant." Here, it is undisputed that Bank of America's net worth is greater than $50 million, consequently, the "lesser" of the two thresholds is $500,000. So, for shorthand, we will refer to this as the $500,000 cap.

[6] The EFTA cap applies to statutory damages, not actual damages or attorneys' fees and costs. 15 U.S.C. §1693m. Thus, this motion does not seek to limit "actual" damages, though in this case it is hard to conceive of actual damage anyone has suffered aside from payment of the ATM fee itself, which (by definition) every class member expressly authorized.

violations all arise "out of the same failure to comply by the same person." This is evident not only from the findings in the Multi-District Litigation Panel's "Transfer Order,"[7] but from how Plaintiffs themselves chose to treat these cases after they were transferred to this District. Plaintiffs filed a consolidated "Second Amended Complaint," styled under the *Brown v. Bank of America* caption and case number. The SAC now comprises a single class action alleging uniform "violations" -- the "placement" and the "wrongful verb" claims -- that happen to cross state lines.

Bank of America is entitled to summary judgment on its Tenth Affirmative Defense, as the maximum amount of statutory damages to which the classes is entitled is $500,000.

**B.    The EFTA Cap Applies to Plaintiffs' State Law Claims.**

The Massachusetts Plaintiffs claim a violation of G.L. c.93A, §2 and §9 and seek damages equal to a refund of the transaction fees paid to withdraw cash from ATM machines outside of their network. The California Plaintiffs seek similar un-capped monetary relief under Section 17200. Both are wrong.

The claim that un-capped monetary recovery can be obtained under these state law claims collides with the express EFTA preemption provision of Section 1693q:

> [The EFTA] does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of [the EFTA], and then only to the extent of the inconsistency. A State law is not inconsistent with [the EFTA] if the protection such law affords any consumer is greater than the protection afforded by [the EFTA].

15 U.S.C. §1693q.

Allowing uncapped recovery -- aside from actual damages -- is "inconsistent with the provisions of" the EFTA. Congress's purpose in enacting the $500,000 would be thwarted if, as Plaintiffs allege here, a claimant could simply "piggyback" the same EFTA violation and restyle it as a claim under a state unfair trade practices statute and obtain uncapped statutory recovery.

---

[7] *See* Transfer Order, *In re Bank of America ATM Fee Litigation*, Oct. 13, 2005.

The EFTA cap is patterned after the identical cap found in TILA at 15 U.S.C. §1640(a). *See Johnson*, 225 F.2d at 378. In the case of the TILA cap, Congress intended to strike a balance between two conflicting interests: (a) encouraging class actions and providing litigants with available relief where there is unlikely to be actual damages while, at the same time, (b) avoiding ruinous exposure to defendants for technical violations, thus making it less likely that courts would certify TILA class actions. *See id.* at 371-73 (quoting legislative history). In adopting the identical TILA cap in the EFTA, Congress intended to adopt the same policy underpinnings as well. *Id.* at 379.

Plaintiffs' state law claims are "inconsistent" with the EFTA in another important respect. The EFTA's $500,000 statutory damages cap is not unqualified. A court must consider the (i) the frequency and persistence of non-compliance; (ii) the nature of such non-compliance; (iii) the resources of the Defendant; (iv) the number of persons adversely affected; and (v) the extent to which the non-compliance was intentional. 15. U.S.C. §1693m(b)(2). However, there are no such mitigating factors for claims under Chapter 93A or Section 17200.

The only court to have considered this issue found the claim of un-capped monetary recovery to be preempted by the EFTA. That ruling arose from an identical "wrongful verb" class action against the same defendant, Bank of America, brought in California state court. (*Hazelaar v. Bank of America, N.A. et al.*, CGC-03-420622 (San Francisco Superior Court, Jan. 19, 2005).[8] In *Hazelaar*, the California court held:

> Using the common usage of the words of the statute, it does not
> seem that a state law affording higher other recovery would
> constitute "greater protection" to the consumers. [S]uch
> consumers would be entitled to recover their actual damages
> without regard to a cap and the amount of costs and attorney's fees
> would likewise not be capped. Thus, consumers are fully protected
> for their actual damages, costs and attorneys' fees under EFTA.
> The amount potentially recoverable as Other Recovery [defined as
> damages that are not actual damages, costs or attorneys' fees] then
> would be something further. Whether such amount should be

---

[8] A true and correct copy of the *Hazelaar* Order is attached to the accompanying Appendix of Authorities in Support of Bank of America N.A.'s Motion for Partial Summary Judgment.

> characterized as profit, windfall, or otherwise, it does not seem
> reasonable to deem it "greater protection" to consumers. It may be
> greater money, but it is not greater consumer protection.
>
> …
>
> Accordingly, any state law basis for an award of Other Recovery in
> excess of the EFTA cap in 15 U.S.C. §1693m(2)(B) is preempted
> by 15 U.S.C. §1693q.

*Id.* at 7-8.

This Court should rule the same. Any relief that Plaintiffs seek under Section 17200 or Chapter 93A is limited in the aggregate to the EFTA limit of $500,000, and may not be in addition to that cap.

### III. BANK OF AMERICA IS ENTITLED TO SUMMARY JUDGMENT ON ITS NINTH AFFIRMATIVE DEFENSE BECAUSE PLAINTIFFS AND THE PUTATIVE CLASSES CANNOT ESTABLISH THE REQUISITE INJURY.

#### A. The EFTA Requires A Showing That The Purported Violation Resulted In Injury Before Actual Damages Can Be Recovered.

The EFTA allows a plaintiff to recover "actual damages" in addition to any statutory damages, but only if such damages are "a result of" the defendant's failure to comply with the EFTA. 15 U.S.C. §1693m (allowing recovery of "any actual damages sustained by such consumer as a result of such failure [to comply with the EFTA]." Although there are no reported decisions construing this language under the EFTA, every Circuit Court of Appeal to have considered the issue -- including the First Circuit -- has uniformly held that the identical "as a result of" language in the TILA[9] requires that Plaintiffs must prove detrimental reliance. *See, e.g., Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.) ("We hold that detrimental reliance is an element of a TILA claim for actual damages, that is a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages."), *cert den.* 534 U.S. 820 (2001); accord: *In re Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002) (same); *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000)

---

[9] 15 U.S.C. §1640(a)(1) provides allows recovery of "any actual damage sustained by such person as a result of the [defendant's] failure [to comply with any requirement imposed under this part]."

(same); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000); *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915 917 (8th Cir. 2000).

The First Circuit agrees. Under the identically-worded provision of TILA, "damages and causation must be shown." *Bizier v. Globe Financial Servs., Inc.*, 654 F.2d 1, 4 (1st Cir. 1981).

Here, Plaintiffs cannot overcome that threshold showing. The crux of the SAC is that Bank of America failed to "prominently and conspicuously" notify in its ATM Decal the fact of the fee and/or used the wrong verb in its California and Maryland signage. (SAC ¶¶18, 19.) Either way, Plaintiffs lose. For those putative class members who actually saw the ATM Decal, the notice was for them not inconspicuous. For those who did not see it or did not or bother to read it, they cannot have detrimentally relied on something they did not see or read.

All that aside, there is an even more compelling reason that precludes Plaintiffs from showing detrimental reliance. The only harm alleged is that putative class members were each charged a fee for withdrawing cash at a Bank of America ATM other than their own bank's machine. (SAC ¶24.) Yet each member of the class was informed on the ATM screen of the exact amount of the fee and clicked "Yes" at the prompt, thereby instructing the Bank, in effect, "Please charge me so I can withdraw cash."

The Court should enter partial summary judgment on this claim, holding that Plaintiffs cannot prove detrimental reliance as required under 15 U.S.C. §1693m(a)(1).

## B.    Chapter 93A Requires A Showing Of Actual Injury Before Relief Can Be Awarded.

The putative Massachusetts subclass is not entitled to relief under Chapter 93A either, for much the same reason: Even if deception were established, "causation is a required element of a successful G.L. c.93A claim." *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 798-799, 840 N.E.2d 526, 533 (2006); accord: *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 401, 813 N.E.2d 476 (2004). If there is no causal connection between the unfair and deceptive act and the loss to the consumer then there is no violation of Chapter 93A because there is no injury. The Court in *Hershenow* noted that in order to be an injury under

Chapter 93A, §9(1), there must "be a causal connection between the seller's deception and the buyer's loss" citing *Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795, 801 (1976) and further that the, "unfair and deceptive act must cause loss of money, loss of property, or personal injury."

For all the reasons set forth above, no member of the putative Massachusetts class can establish that the Bank of America's placement or print-size on its ATM Decals caused their loss. Moreover, even if there were some shortcoming with "conspicuousness," the click-through screen made sure that every putative class member knew of the cash withdrawal fee before completing the transaction. In short, no Massachusetts class member could have paid the fee "as a result of" the alleged inconspicuous placement of the ATM Decal and its print size.

The Court should enter summary judgment on Plaintiffs' Second Count.

**C.    California Bus. & Prof. Code §17200 Requires A Showing Of Actual Injury Before Relief Can Be Awarded.**

The claim of the California subclass under Section 17200 is defective on this same ground. A claim under Section 17200 requires plaintiff to establish that he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." *See* Cal. Bus. & Prof. Code §§17203, 17204, 17535. Here, no member of the California subclass suffered injury or lost money or property "as a result of" the bank's failure to conspicuously display its ATM Decal print size or "as a result of" its use of the verb "may."

The Court should enter summary judgment on Plaintiffs' Third Count.

### CONCLUSION

For all the foregoing reasons, this Court should enter (i) Partial Summary Judgment against the Maryland and California on their "wrongful verb" claim; (ii) Partial Summary Judgment on the Bank's Tenth Affirmative Defense -- $500,000 cap; (iii) Partial Summary

Judgment on the EFTA count (Count One); (iv) Summary Judgment on the Second

(Chapter 93A);  and (v) Third Counts (Section 17200) on the ground that as a matter of law,

Plaintiffs cannot establish loss causation.


Dated: March 24, 2006                     DEFENDANTS

                                          BANK OF AMERICA, N.A.

                                          By its attorneys,


                                          /s/ E. Macey Russell
                                          E. Macey Russell, P.C. (BBO #542371)
                                          Choate, Hall & Stewart, LLP
                                          Exchange Place, 53 State Street
                                          Boston, MA 02109
                                          Tel.: (617) 248-5000
                                          Fax: (617) 348-4000

                                          William L. Stern (Cal. Bar No. 96105)
                                          *Admitted pro hac vice*
                                          Rebekah Kaufman (Cal. Bar No. 213222)
                                          *Admitted pro hac vice*
                                          Morrison & Foerster LLP
                                          425 Market Street
                                          San Francisco, California  94105-2482
                                          Tel.: (415) 268-7000
                                          Fax: (415) 268-7522

## CERTIFICATE OF SERVICE

I, E. Macey Russell, counsel for the Defendant, Bank of America, N.A., hereby certify

that this document filed through the ECF system will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing (NEF).


                                          /s/ E. Macey Russell
                                          E. Macey Russell