**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DOUGLAS S. BROWN, STEPHEN KAWELTI, and JAMES A. PROSSER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 05-10713-PBS |
| BANK OF AMERICA, N.A., | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, Douglas Brown, Stephen Kawelti and James Prosser, respond as follows in opposition to defendant Bank of America, N.A.'s motion for partial summary judgment.

**I.     INTRODUCTION**

Congress has provided certain requirements for notifying consumers of any fees that will be charged in connection with using automatic teller machines ("ATMs"). 15 U.S.C. §§1693 *et seq.* ("the EFTA"). Those rules require that ATM operators post a "prominent and conspicuous" notice on or at their machines informing consumers that a fee will be imposed for certain transactions.

Plaintiffs, who were not Bank of America customers, withdrew money from Bank of America's ATMs, and were charged a fee for doing so. Plaintiffs filed suit against the Bank of America alleging that its ATM fee notices were not prominent and conspicuous, and used the wrong wording, and hence violated the EFTA. Bank of America has moved for partial summary judgment on the grounds that the wording of the notices complied with the EFTA, the class members' damages should be capped at $500,000 and plaintiffs have failed to prove "loss causation" with

respect to their state law claims.

## II.    STATEMENT OF FACTS

Plaintiffs, Kowelt, Brown and Prosser, who are not customers of Bank of America, withdrew money from Bank of America ATMs in California, Massachusetts and Maryland. The fee notices required by the EFTA were not located in prominent and conspicuous locations on the ATMs used by plaintiffs, instead they were placed on the side of the machines, and contained print that was difficult to read. In addition, the fee notices in California and Maryland do not state that a fee will definitely be charged. Instead they provide: "The owner of this terminal, Bank of America, may charge a $1.50 fee for a cash withdrawal from your NON- Bank of America account. This charge is in addition to any fees which may be assessed by your financial institution. This additional charge will be added to your total withdrawal amount. For questions, please contact your financial institution." (Def. Statement of Material Facts, Sec.I, No. 2)

## III.   STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Leon v. Municipality of San Juan, 320 F.3d 69, 71 (1st Cir. 2003). All reasonable inferences must be drawn in the light most favorable to the nonmoving party. Paparo v. M/V Eternity, 433 F.3d 169, 172 (1st Cir. 2006).

Consumer protection statutes such as the EFTA should be liberally construed in favor of consumers. Barnes v. Fleet National Bank, NA, 370 F.3d 164, 171 (1st Cir. 2004); Bizier v. Globe Fin. Servs., Inc., 654 F.2d 1, 2-3 (1st Cir. 1981) (construing the Truth in Lending Act

broadly to protect bank customers).

**VI.     THE EFTA REQUIRES BANK OF AMERICA TO INFORM CONSUMERS THAT A FEE WILL BE IMPOSED FOR WITHDRAWALS.**

Bank of America's notice states that "[t]he owner of terminal, Bank of America, may charge a $1.50 fee for a cash withdrawal from your NON-Bank of America account. This fee is in addition to any fees that may be assessed by your financial institution. This additional charge will be added to your total withdrawal amount." (Def. SMF, §B(2)).  Bank of America argues that the so-called "click-through" screen notice which later appears on the computerized screen after the consumer inserts his/her ATM card cures any earlier defect.  Unfortunately, these two notices cannot be "piggy backed" to cure the defects in Bank of America's EFTA violations.  Simple statutory construction requires that Bank of America affirmatively inform consumers when a fee will be imposed for an ATM withdrawal.

**A.     The Plain Language of the Statute Requires a Definitive Disclosure.**

Bank of America argues that the Plaintiffs are complaining about a mere error in verb usage.  It summarizes the issue as a "verb choice," Def. SMF, p. 1, and claims that the EFTA does not contain a requirement that consumers be affirmatively notified when a fee will be charged. Def. SMF, p. 2.

Contrary to these statements, however, the EFTA plainly requires Bank of America to disclose that a fee will be imposed.  As Bank of America acknowledges, the first rule of statutory construction is that the plain language of the statute should be applied. Chatman v. Gentle Dental Center of Waltham, 973 F.Supp.2d 157 (D.Mass. 1997).  The statute plainly provides that the disclosures must inform the consumer of the fact that a fee is charged.
The EFTA, 15 U.S.C. §1693b, provides:

      (3) Fee disclosures at automated teller machines.
         (A) In general. The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of --

            (i) the fact that a fee is imposed by such operator for providing the service; and

            (ii) the amount of any such fee.

         (B) Notice requirements.

            (i) On the machine. The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

            (ii) On the screen. The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on the date of the enactment of the Gramm-Leach-Bliley Act [enacted Nov. 12, 1999] and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

Courts should presume that a legislature "says in a statute what it means and means in a statue what it says there." In re Hart, 328 F.3d 45, 49 (1st Cir. 2003). The statute uses language which plainly requires a definite and unambiguous disclosure that a fee will be imposed. That language should be applied, and when it is, it is clear that Bank of America's notice is not sufficient.

Notwithstanding defendant's assertion that its ATM notice correctly alerts users of the possibility that a fee "may" be imposed at a point when the identity of the user is as yet unknown

and "unknowable" to Bank of America, the bank is well aware of the identity of the users upon whom a fee will be imposed, the circumstances of which are readily ascertainable. This very limited category where the Bank does not charge a fee for non customers ATM usage could be easily disclosed with a simple decal on the respective ATM alerting the consumer that a charge will be assessed except in the following circumstances. Although defendant points out that the word "is" means "that which is factual, empirical, actually the case," Def. SMF, §I(1), data provided during this case reveals that Bank of America charges over **99.5**% of non-customers in California and Maryland a useage fee for domestic ATM withdrawals. (Plaintiffs' Additional Facts, ¶¶2, 3)  This revelation is simply staggering.  The use of the word "may" under this scenario is clearly deceptive and precisely the type of statistic that compliance with the EFTA Miranda warnings would avoid. The <u>Morrissey v. Webster Bank, N.A.</u>, 417 F.Supp.2d 183 (D.Mass.) case, upon which Bank of America attempts to rely, is readily distinguishable because 77.5 % of noncustomers in that case were <u>not</u> charged a fee.  Further, Judge Young simply ignored the statutory interpretation arguments in <u>Morrissey</u> and therefore this case deserves a fresh review of these issues.[1]

**B.    The Legislative History Supports Plaintiffs' Interpretation.**

Courts traditionally review the legislative history in addition to assist in determining "Congressional intent."  In <u>National Labor Relations Board v. United Food and Commercial Workers</u> 484 U.S. 112, 123, (1987) a unanimous Supreme Court stated that: "On a pure question of statutory construction, our first job is to try to determine congressional intent, using 'traditional tools

---

[1] <u>Mohler v. Manufacturers and Traders Trust Co.</u>, 2006 WL 901639 (D.Md. March 24, 2006), which merely follows the <u>Webster</u> decision without analysis and without any statistics on the number of noncustomers who were charged fees, is similarly not useful for precedential purposes.

of statutory construction.' If we can do so, then that interpretation must be given effect, and the regulations at issue must be fully consistent with it." (citations omitted)  In this case, the only relevant and certainly the overwhelmingly most persuasive legislative history clearly speaks to the intention of Congress on this issue, and confirms Plaintiffs' position. "[I]n surveying legislative history we have repeatedly stated that the authoritative sources for finding the Legislature's intent lies in the Committee Reports on the bill, which "represen[t] the considered and collective understanding of those congressmen involved in drafting and studying the proposed legislation." Garcia v. United States 469 U.S. 70 (1984)(citations omitted). The committee reports state *ad nauseam* that the 1999 amendments to the Electronic Funds Transfer Act ("the EFTA") require that banks state that a fee **will be** imposed on both notices.

**House Committee Report**:

> Section 171 designates subtitle H as the 'ATM Fee Reform Act of 1999.' Section 172. Electronic fund transfer fee disclosures at any host ATM. "Section 172 amends the Electronic Funds Transfer Act (EFTA) by requiring certain disclosures regarding automated teller machine (ATM) surcharge fees . . . ATM operators assessing surcharges are required to (1) post a sign on the ATM machine stating that a fee **will be charged**;" Committee Report 2 of 100 - House Rpt.106-074 - Part 3 - FINANCIAL SERVICES ACT OF 1999. (emphasis provided)

**House Conference Report:**

> The House Conference Report, issued on November 2, 1999, 10 days before the ATM REFORM ACT passed the Congress, and distributed to each member of the House of Representatives, states that the notice "on the machine and on the screen" must state "that a fee **will be charged**." (emphasis provided)

**Senate Banking Committee, Statement of Managers:**

The Senate Banking Committee, Statement of Managers, Summary of Major Provisions, released Monday November 1, 1999 (11 days before the REFORM ACT was enacted by the Congress) stated: "Subtitle A--ATM Fee Reform" Senate Position: The Senate bill at Title VII requires automated teller machine ("ATM") operators who impose a fee for use of an ATM by a noncustomer to post a notice on the machine and on the screen that a fee **will be charged**. (emphasis provided)

All three legislative reports unambiguously, clearly, and directly state that a notice must be posted on the machine stating that a fee "will" be imposed. The House Committee Report expressly states that notice must be posted on the ATM machine that a "fee will be charged." The House Conference Report expressly states that the *same notice* must be posted on the screen and on the machine "that a fee will be charged." The Senate Banking Committee, Statement of Managers expressly states that the ATM operator must "post a notice" on the machine and the screen "that a fee will be charged." All three reports specifically state that they are discussing the notice posted "on the machine." Thus, there is no ambiguity in the legislative history of the EFTA amendments. The legislative history unequivocally supports the plaintiffs' position that the use of the word "may" on the signage posted at Bank of America's ATMs violates the EFTA.

### C. The "Click Through Notice" Does Not Cure the Failure to Adequately Comply with the Initial EFTA Notice Requirement

Bank of America also argues that its decal notice is followed by a series of on screen notices that ultimately alert the consumer that a fee will be charged. Unfortunately, their on screen compliance does not somehow excuse the failure to properly notify the consumer before they begin to invest any time in the transaction. It is noteworthy that Bank of America is so quick to seek this

Court's admiration for complying with one part of the federal statute as an excuse for ignoring the mandates of another part of the statute. The EFTA is clear in that proper disclosures must be given both on or at the ATM and on the screen .

### D. The FTC Regulation E Amendments are Not Retroactive

Bank of America also contends that this Court should apply the new Federal Reserve Board commentary on Regulation E to this case. However, that commentary was adopted *after* plaintiffs' transactions, and it conflicts with the actual language of the EFTA, and therefore is not relevant to the transactions at issue in this case.

### V. PLAINTIFFS' STATE CLAIMS ARE NOT PREEMPTED BY THE EFTA $500,000 CAP.

Defendant's claim that California and Massachusetts' law are preempted is contrary to the express provisions of the EFTA that preserves greater protections to the consumer. "A court's sole task in determining whether a state statute is preempted is to ascertain whether Congress intended the federal law to have such effect. Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1273-1274 (1st Cir. 1993). Congress has provided clear direction to the Court by including the following provision in the EFTA:

> This title does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of this title and then only to the extent of the inconsistency. A State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection afforded by this title. 15 U.S.C. § 1693q.

Defendant contends that the provisions of 15 USC §1693m (a)(2)(B), which only addresses damages, limits the non-damage relief available to the putative class members under California's Unfair Competition Law ("UCL"), California's Business and Professions Code, §17200, and the Massachusetts consumer protection statute, G.L. c.93A. Given §1693q, defendant's argument is

meritless.  Defendant cites only one case, a narrow, unreported California state court decision, which partially accepted its argument, while admitting that there is no known authority on the issue. (Hazelaar v. Bank of America)[2]  This Court should not adopt the Hazelaar court's opinion on that issue.  Instead, this Court should follow First Circuit authority, which clearly does not contemplate that caps such as the EFTA cap apply to 93A claims. Barnes v. Fleet National Bank, NA, 370 F.3d 164, 171 (1st Cir. 2004) (explaining how class could recover up to $500,000 for Truth in Savings claim, and $25 a person for 93A claim in a case where the class clearly exceeded 20,000 people).

The Hazelaar court found that "other recovery," apart from actual damages, costs and attorneys fees were preempted by the EFTA $500,000 cap.[3]  Hazelaar was wrongly decided. "Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (Cal. 2003).  Massachusetts G.L. 93A does likewise. Martin v. Sands, 62 F. Supp. 196, 201 (D. Mass. 1999); 940 C.M.R. 3.16(4).  Section 17200 does not provide for "recovery of damages"… [p]revailing plaintiffs are generally limited to injunctive relief and restitution. Korea Supply, 29 Cal. 4th at 1144.  G.L. 93A provides for actual damages, injunctive relief and a minimum damage of $25 per violation. Barnes v. Fleet National Bank, NA, 370 F.3d 164, 171 (1st Cir. 2004). Therefore, the damage provision relied on by the Defendant does not affect the protections afforded by California's

---

[2] Defendant's failure to cite any TILA or FDCPA cases on this issue, despite defendant's continued insistence that TILA case law applies to the EFTA is significant.  Both TILA and the FDCPA have a similar cap for class action judgments, but defendant can cite no cases providing that the TILA and FDCPA damages caps also apply to state law claims based on the same conduct.

[3] "Other recovery" would include disgorged profits which are sometimes recoverable under the California UCL, and possibly the $25 minimum damages provided by Massachusetts G.L. 93A. (Hazelaar, p. 7-8)  The Hazelaar court made it clear that a consumer can recover actual damages under the EFTA. Id.

UCL or Massachusetts' G.L., c. 93A. Plaintiffs submit this is precisely the type of "greater consumer protections" envisioned by and protected by §1693q.

The Defendant must convince this Court that Congress, despite the language it used in the specific statute to preserve greater protections to consumers under state laws, did not mean what it said. Further, that Congress could not envision that there were any other protections available to consumers other than damages. The Defendant wants this Court to hold that there is implied preemption of a non-damage remedy afforded under state law because there is a limit on class damages. The defendant's request contradicts elementary canons of statutory construction, specific statutory provisions control over general provisions, as well as the rules applicable to preemption.

Preemption may only occur in one of three ways. There is express preemption or implied preemption that comes in two forms. In applying the Supremacy Clause, courts "start with the assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." Medtronic v. Lohr, 518 U.S. 470, 485 (1996) (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Therefore, "'the purpose of Congress is the ultimate touchstone' in every pre-emption case." Id. The Supreme Court has stated that Congress may make its intent to preempt clear either expressly or implicitly. See Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995). Implied preemption, in turn, takes two forms. "We have found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. See also, King v. Ford Motor Co., 209 F.3d 886, 891 (6th Cir. 2000); Abbot v. American Cyanamid Co., 844 F.2d 1108, 1112 (4th Cir. 1988), cert. den. 488 U.S. 908 (1988).

The burden is on the party claiming preemption to demonstrate its existence. Shanklin v. Norfolk Southern Ry., 173 F.3d 386 (6th Cir. 1998); McCarthy v. Option One Mortg. Corp., 2001 U.S. Dist. LEXIS 22711 (N.D. Ill. 2001) (court refused to find preemption on motion to dismiss, because the lender did not create record sufficient to carry its burden). "Pre-emption is not lightly to be presumed". California Federal S. & L. Assn. v. Guerra, 479 U.S. 272, 280-281 (1987). "In the interest of avoiding unintended encroachment on the authority of the States, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, preemption will not lie unless it is 'the clear and manifest purpose of Congress'." CSX Transportation v. Easterwood, 507 U.S. 658, 663-664 (1993) quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947). The Hazelaar opinion does not provide any discussion of case law regarding preemption in making its erroneous finding.

Congress set forth its intent in 15 U.S.C. § 1693q. Defendant's reliance on 15 U.S.C. §1693m for a finding of preemption is misplaced. Moreover, the issue addressed by §1693m is damages and not the relief provided under California's UCL or Massachusetts G.L. 93A, which are protected by §1693q. Accordingly, the Defendant's effort to limit the relief available to the class under California's UCL and Massachusetts G.L. 93A should be denied.

## VI.    PLAINTIFFS CAN RECOVER ACTUAL DAMAGES UNDER THE EFTA.

Defendant contends, based on various Truth in Lending Act cases, that plaintiffs cannot recover actual damages under the EFTA unless they prove detrimental reliance. There is no case law or secondary authority supporting defendant's claim that the TILA's detrimental reliance requirement for actual damages is to be imported into the EFTA. None of the cases defendant cites hold, or even discuss whether because actual damages under the TILA require a finding of

detrimental reliance, the same should be imported into an entirely different subchapter of the Consumer Credit Protection Act. Indeed, no case defendant has or can cite, holds, states or discusses whether the TILA's detrimental reliance requirements to be imported into any subchapter of the CCPA, other than those included in the TILA or involving disclosures of the terms of credit. Nor does any federal case discussing the "actual damages" provisions of any subchapter outside the TILA refer to the TILA for a definition of the meaning of actual damages under the other subchapter. The cases interpreting the TILA's actual damages requirements demonstrate that the requirements simply do not apply to this case or to many other circumstances where a plaintiff seeks actual damage under a subchapter of the CCPA where the purpose is not the informed use of credit.

The plain language of the EFTA must be examined in order to determine whether it makes sense to apply the TILA cases to the EFTA. Hughey v. United States, 495 U.S. 411, 415, (1990). It is a "cardinal rule that a statute be read as a whole (Massachusetts v. Morash, 490 U.S. 107, 115 (1989)), since the meaning of statutory language, plain or not, depends on context. King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991). Moreover, the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989).

The plain language of the of the EFTA requires both the on screen notice (15 U.S.C. §1693b(d)(3)(B)(ii)) and the notice "on or at" the machine (15 U.S.C. §1693b(d)(3)(B)(I)). The plain language of Section 1693b(d)(3)(c) provides that:

> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless--
> (I) the consumer receives such notice in accordance with subparagraph (B); and
> (ii) the consumer elects to continue in the manner necessary to effect the

transaction after receiving such notice.

Nothing in the above section indicates that only the on-screen notice must be provided for the section to apply. The plain language of the statute provides that a fee can't be charged unless the consumer receives notice in accordance with the prior section, which requires both on or at machine and on screen notices.

Finally, the plain language of 15 U.S.C. §1693m, provides, in pertinent part: "any person who fails to comply with any provision of this subchapter with respect to any consumer… is liable to such consumer in an amount equal to the sum of - (1) any actual damage sustained by such consumer as a result of such failure;" Here, the defendant "fails to comply" with two provisions. First, it fails to give the notices required by 15 U.S.C. §1693b(d)(3)(B)(I) and second it imposes a prohibited fee on the consumers in violation of an express prohibition.

Thus, the only real issue for this court is whether a bank that charges a consumer a fee that is expressly prohibited by law damages the consumer by requiring the consumer to pay the illegal fee. The plain statutory language provides an unambiguous answer. When a bank forces plaintiffs to pay a fee that the law prohibits, it causes the consumer damage. This proposition is elementary logic and about as basic a legal principle as one can find.

Defendant's interpretation of the statute as excluding from the remedy of actual damages the payment of a fee which is imposed in violation of 15 U.S.C. §1693b(d)(3)c) also violates yet another "cardinal rule" of statutory interpretation. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant.'" TRW Inc. v. Andrews, 534 U.S. 19, 21 (2001) quoting Duncan v. Walker, 533 U.S. 167, 174 (2001) internal quotation marks

omitted).

Defendant's interpretation of the EFTA makes §1693h(a)(d) of the EFTA superfluous.  15 U.S.C. §1693h was amended at the same time (November 12, 1999) as the other provisions related to ATM surcharges were added to the statute.  15 U.S.C §1693h provides a damage provision separate from 15 U.S.C. §1693m.  15 U.S.C. §1693h provides for liability for "(a) action or failure to act proximately causing damages…"It provides that a bank is not liable for failure to post the notice required by §1693b(d)(3)(B)(1) under the following circumstances:

> "d) Exception for damaged notices
> If the notice required to be posted pursuant to section 1693b(d)(3)(B)(I) of this title by an automated teller machine operator has been posted by such operator in compliance with such section and the notice is subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine, the operator shall have no liability under this section for failure to comply with section 1693b(d)(3)(B)(I) of this title."

Defendants' interpretation of the statute would make this provision, specifically added to the statute at the time the notices were required to be posted and at the time fees were prohibited if the notices were not "posted in compliance with" §1693b((d)(3)(B)(I) superfluous and of no effect.   Under defendant's interpretation, there can be no damage for violation of §1693b(d)(3)(B)(I) so long as the screen notice is posted and the consumer accepts the fee.  But then why did Congress, in a section of the statute which states "a) Action or failure to act proximately causing damages" state that the failure to post the notice was excused and there would be no liability for failure to comply with a notice requirement that could never cause damage in any event?[4]

Indeed, under the bank's interpretation of the statute, even if the bank simply refused

---

[4] 15 U.S.C. 1693h is a separate liability section from 15 U.S.C. 1693m and has no provisions for statutory damages only damages for an "action or failure to act proximately causing damages."

...

to put up the notice, there would be no liability for actual damages. The banks could unlawfully impose the surcharge, despite Congress's clear mandate that two signs be posted or the surcharge is prohibited, so long as the screen notice told the customer of the charge. Statutory liability would remain, but the illegally charged fee would remain the property of the bank that illegally charged it. If defendant's argument were true, it would be far more profitable for Bank of America to collect millions in dollars in fees, and pay the $500,000 statutory penalty if somebody complained, given the number of non-customer transactions at Bank of America ATMs (See Exhibit 1 to Plaintiffs' Response to Defendant's Statement of Material Facts). Such a result is absurd, and should not be adopted by this Court

## VII. THE PLAINTIFFS MEET THE STANDING REQUIREMENTS UNDER STATE LAW. THE PLAINTIFFS HAVE SUFFERED AN INJURY IN FACT AND LOST THEIR MONEY AS A RESULT OF THE DEFENDANT'S UNFAIR COMPETITIVE PRACTICE.

Defendant contends that plaintiffs cannot state a claim under state law because they have not suffered actual injury. Defendant is wrong under both California and Massachusetts law. At this time, for an individual to assert a claim under the California UCL, the individual must show that he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." California Business & Professions Code, §17204. Previously California's UCL allowed anyone aware of a violation to file a claim on behalf of the general public, whether they had actually been affected by the defendant's unfair competition or not. Plaintiffs easily meet the standard under California's current UCL. Defendant does not dispute that the plaintiffs each were charged a fee in connection with a withdrawal from an ATM operated by the defendant.

Plaintiffs further contend that defendant was only allowed to charge that fee if it complied with the EFTA. See, 15 USC §1693b (d)(3). If the defendant did not comply with the

EFTA, then the defendant engaged in unfair competition under California's UCL. Unfair competition under California's law arises from a defendant's breach of any law. "Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices." (citation omitted). <u>Korea Supply Co. v. Lockheed Martin Corp</u>., 29 Cal. 4th 1134, 1143 (Cal. 2003). The fee collected by defendant from the plaintiffs arose directly from defendant's unfair competitive practice, i.e. violation of the EFTA. The plaintiffs have an interest in the fee collected – it was their money. The plaintiffs meet the requirements for an action under the California UCL.

Plaintiffs can also recover under Massachusetts G.L. 93A. Defendant's argument is based entirely on <u>Hereshow v. Enterprise Rent-A-Car Co. of Boston, Inc.</u>, 445 Mass. 790, 840 N.E.2d 526 (2006), a case involving an illegal provision in a rental car contract relating to damage to the rental vehicle. The plaintiffs in <u>Hereshow</u> suffered no damage as a result of the illegal provision because their vehicles were not damaged so the illegal provision did not come into play. <u>Hereshow</u> is distinguishable from the present case, where the EFTA forbids the collection of a surcharge for withdrawing cash if the surcharge is not properly disclosed. All of the plaintiffs used ATMs where the surcharge was not properly disclosed, and all of the plaintiffs paid an illegal surcharge. The plaintiffs in this case thus suffered direct damages resulting from defendant's EFTA violation, and <u>Hereshow</u> does not apply. Defendants' motion for summary judgment must therefore be denied with respect to plaintiffs' state law claims.

## **CONCLUSION**

For the reasons stated above, this Court should deny defendant's motion for partial summary judgment.

Respectfully submitted,

s/Cathleen M. Combs
Cathleen M. Combs
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
CLAUDE LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI  02860
(401) 728-6060
    (401) 728-6534 (FAX)
    B.B.O. # 629056


**CERTIFICATE OF SERVICE**

    I, Cathleen M. Combs, hereby certify that on June 30, 2006, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


s/Cathleen M. Combs
Cathleen M. Combs